UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | CASE NO. 1:11-cv-00499-LJO-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| COREY BURLESON, aka Rodney Burleson, aka Corey Rodney Burleson, dba FREEWAY LANES BOWLING ALLEY, aka Nacho Mama's, | (Docket No. 13) |
| | **OBJECTIONS DUE WITHIN 15 DAYS** |
| Defendant. | |
| _____ / | |

## I. INTRODUCTION

On August 5, 2011, Plaintiff Joe Hand Promotions, Inc. ("Plaintiff") filed the present motion for default judgment against Defendant Corey Burleson, aka Rodney Burleson, aka Corey Rodney Burleson, dba Freeway Lanes Bowling Alley, aka Nacho Mama's ("Defendant" or "Corey Burleson"). (Doc. 13.) The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED.

## II.  FACTUAL BACKGROUND

Plaintiff filed the instant action on March 24, 2011.  (Doc. 1.)  The complaint alleges violations of 47 U.S.C. §§ 605 and 553, as well as causes of action for conversion and for violation of the California Business and Professions Code section 17200, *et. seq*.  The suit is based on Defendant's alleged unlawful interception, receipt, and exhibition of "*Ultimate Fighting Championship 111: Georges St. Pierr v. Dan Hardy*" (the "Program"), including all under-card bouts and fight commentary, that was telecast nationwide on March 27, 2010.  (Doc. 1, ¶¶ 9, 12.)  According to the complaint, Plaintiff was the exclusive commercial distributor of the Program.  (Doc. 1, ¶ 9.)

Count I of the complaint asserts a violation of 47 U.S.C. § 605 (Unauthorized Publication or Use of Communications) alleging that Defendant knowingly intercepted, received, and exhibited the Program for purposes of direct or indirect commercial advantage or private financial gain.  (Doc. 1, ¶¶ 8-17.)  Plaintiff seeks $100,000 in statutory damages as well as attorney's fees and costs.  (Doc. 1, ¶ 17.)  Count II alleges a violation of 47 U.S.C. § 553 (Unauthorized Reception of Cable Services) based upon the same allegations.  (Doc. 1, ¶¶ 18-22.)  Plaintiff requests $60,000 in statutory damages, as well as attorney's fees and costs.  (Doc. 1, ¶ 22.)  Count III states a claim for conversion alleging that Defendant tortiously obtained possession of the Program and wrongfully converted it for his own benefit.  (Doc. 1, ¶¶ 23-26.)  As to Count III, Plaintiff seeks compensatory damages, exemplary damages and punitive damages.  (Doc. 1, ¶ 26.)  Count IV of the complaint alleges a violation of the California Business & Professions Code § 17200, *et. seq*.  (Doc. 1, ¶¶ 27-36.)  As to Count IV, Plaintiff seeks restitution, declaratory relief, injunctive relief, attorney's fees, and costs of suit.  (Doc. 1, ¶¶ 35-36.)

On July 7, 2011, the summons as to Defendant was returned showing that service of the summons and complaint was effected by substitute service on June 12, 2011.  (Doc. 9.)  Defendant failed to respond to the complaint.  On July 15, 2011, pursuant to Plaintiff's request, the Clerk entered default against Defendant.  (Doc. 11.)  On August 5, 2011, Plaintiff filed this motion for default judgment against Defendant.  (Doc. 13.)  Defendant did not oppose the motion.

## III. DISCUSSION

**A.     Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered as follows:

> By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to:
>
> (A)  conduct an accounting;
> (B)  determine the amount of damages;
> (C)  establish the truth of any allegation by evidence; or
> (D)  investigate any other matter.

Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Dundee Cement Co. v. Highway Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**B.     Application of the *Eitel* Factors**

**1.     Possibility of Prejudice to Plaintiff**

Typically, this factor weighs in favor of default judgment because, if default judgment is not entered against a defendant who has refused to participate in the litigation, the plaintiff may be effectively denied a remedy until such time as the defendant participates and makes an appearance in the litigation – which may never occur. Denying a plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). Thus, this factor weighs in favor of granting default judgment.

### 2. Merits and Sufficiency of Plaintiff's Complaint

The next relevant *Eitel* factors include consideration of the merits of the substantive claims pled in the complaint as well as the general sufficiency of the complaint. In evaluating the adequacy of the complaint, courts determine whether it sufficiently states a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotations omitted).

#### a. Violation of 47 U.S.C. § 605

Title 47 of the United States Code, Section 605 is part of the Cable Communications Policy Act of 1984, which amended the Communications Act of 1934. A person violates Section 605 by "receiving," "assisting in receiving" or "transmitting" any communication by wire or radio without proper authorization. Specifically, Section 605 provides the following:

> Except as authorized by chapter 119, title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, . . .

47 U.S.C. § 605(a). To state a claim for an alleged violation of Section 605, the plaintiff must plead that the defendant received, assisted in receiving, or transmitted the plaintiff's satellite transmission without authorization. *See DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (satellite television signals are among the "communications" protected by the Communications Act, prohibiting unauthorized receipt and use of radio communications for one's own benefit or for benefit of another not entitled thereto). In the complaint, Plaintiff asserts that it "was granted the exclusive nationwide commercial distribution (closed-circuit) rights to [the Program]." (Doc. 1, ¶ 9.) Plaintiff also alleges that Defendant unlawfully intercepted the Program at the time of its transmission "at his commercial establishment in Selma, California." (Doc. 1, ¶ 12.) Thus, Plaintiff has adequately set forth a claim under Section 605.

#### b. Conversion

Under California law, conversion is the wrongful exercise of dominion over the property of another. The elements of conversion are, "the plaintiff's ownership or right to possession of the

property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581 (2005); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant." *Gilman v. Dalby*, 176 Cal. App. 4th 606, 615 n.1 (2009). Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion. *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995) (misappropriation of intangible property without authority from owner is conversion); *see also DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189 (E.D. Cal. 2005) (concluding that the right to distribute programming via satellite constituted a right to possession of personal property for purposes of a conversion claim under California law.)

Here, Plaintiff alleges that it was granted the exclusive domestic commercial exhibition licensing rights to the Program, and thus had the right to possession of the property at the time that Defendant allegedly intercepted it and displayed it at his establishment. (Doc. 1, ¶ 9, 12.) Plaintiff asserts that Defendant did not legally purchase the Program and that the exhibition of the Program in Defendant's establishment on March 27, 2010, constituted conversion by a wrongful act or disposition of property rights. (Doc. 1, ¶¶ 24-25.) These allegations constitute a sufficiently pled claim for conversion under California law.[1]

      **c.**    **Conclusion**

Plaintiff's claims for violation of Section 605 and conversion are generally well pled and the claims for which Plaintiff seeks damages in default judgment are sufficiently stated. Therefore, this factor weighs in favor of granting default judgment.

    **3.**    **The Sum of Money at Stake**

The fourth *Eitel* factor, the sum of money at stake, weighs in favor of default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light

---

[1] Plaintiff also pled counts for violation of 47 U.S.C. § 553 and for violation of the California Business and Professions Code § 17200. In the motion for default judgment, however, Plaintiff does not seek an award of damages pursuant to these claims.

5

of the defendant's actions. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). Here, Plaintiff seeks an award of $10,000 for statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), enhanced statutory damages in an amount subject to the Court's discretion not to exceed $100,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), and $900 for conversion damages. Under the applicable statute, Plaintiff is entitled to seek a substantial amount in damages. Given the fact that Congress expressly permitted a court to award statutory damages up to $110,000 per act of piracy pursuant to Section 605, it is somewhat incongruent to determine that the statutory damages requested are an unreasonably large sum that should not be awarded in default judgment; certainly Congress envisioned circumstances where the imposition of maximum statutory damages would be reasonable. While there are factors in this case that indicate a smaller statutory award is appropriate, the maximum statutory damages Congress authorized a court to award is not per se unreasonable such that it would preclude or weigh against the entry of default judgment. This factor weighs in favor of default judgment.

### 4. Possibility of Dispute Concerning Material Facts

With regard to this factor, no genuine issue of material fact is likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Defendant has submitted nothing to contradict the well-pled allegations. Accordingly, this factor favors entry of default judgment.

### 5. Whether Default was Due to Excusable Neglect

There is no evidence that Defendant's failure to participate in the litigation is due to excusable neglect. Thus, this factor weighs in favor of granting default judgment.

### 6. Policy Favoring Decisions on the Merits

This factor inherently weighs strongly against awarding default judgment in every case. In the aggregate, however, this factor is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment.

**C.  Damages**

In its motion, Plaintiff seeks default judgment and an award of damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) (statutory damages) in the amount of $10,000 and 47 U.S.C.

§ 605(e)(3)(C)(ii) (enhanced statutory damages) in an amount not more than $100,000 against Defendant for unlawfully intercepting, receiving, and exhibiting the Program on March 27, 2010. Plaintiff also seeks damages in the amount of $900 for its state law conversion claim.

### 1.     Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II)

Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(C)(i)(II) and enhanced statutory damages pursuant to Section 605(e)(3)(C)(ii). (Doc. 12-1, 11:15-16; 15:1-2.) Pursuant to Section 605(a), "[n]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission of reception. . . ."  Those who violate this Section are subject to the following civil penalty:

> [T]he party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4)[2] of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff attests that it is a closed-circuit distributor of sports and entertainment programming that purchased and retained the exclusive commercial exhibition licensing rights to the Program. (Doc. 15, ¶ 3.) Plaintiff marketed the sub-licensing (commercial exhibition) rights in the Program to its commercial customers. (*Id.*) Plaintiff contends that persistent signal piracy of its programming costs the company, its customers, and the community millions of dollars annually. (*Id.* at ¶ 12.) Plaintiff believes that the continued signal piracy is caused, in part, from the perceived lack of consequences (including nominal or minimal damage awards by the courts who hear its cases) for such unlawful interception and exhibition by the commercial signal pirates. (*Id.*) As such, Plaintiff requests that it be awarded the maximum allowance for statutory violations, totaling $10,000.

---

[2] Paragraph 4 relates to persons who manufacture, assemble, modify, import, export, sell, or distributed any device or equipment knowing that the equipment is primarily of assistance in the unauthorized description of satellite cable programming. Plaintiff does not assert that Paragraph 4 is applicable in this case.

7

The program was exhibited on only one television in an area that accommodated a maximum of 13 people; between 10 and 13 people were noted to be present during exhibition of the Program. In that sense, this case differs from other cases where this Court has awarded the maximum in statutory damages. *See, e.g., Joe Hand Promotions, Inc. v. Labonte II*, No. 1:10-cv-02164-LJO-SKO, (awarding $10,000 damages where seating capacity of establishment 200 and 55 people present during exhibition of program). The damages awarded, however, should be an amount that is adequate to deter this Defendant and others from committing similar acts in the future. *See, e.g., Garden City Boxing Club, Inc. v. Batista*, No. 05-cv-1044, 2007 WL 4276836, at *4 (E.D.N.Y. 2007) (when awarding damages under Section 605, "courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy . . . [and] the deterrent purposes of the statute"). *See J &J Sports Productions, Inc. v. Marcaida*, 2011 WL 2149923, at * 4 (N.D. Cal. May 31, 2011) ("The need to deter future piracy by Defendant and others requires an award substantially higher than the cost Defendant would have incurred to purchase a license to lawfully exhibit the program."). The cost of purchasing this program legally was $900. Considering the need for deterrence and balancing this need against the fact that only a small number of people were in attendance as well as the very limited seating capacity in the viewing area, the Court recommends that statutory damages be awarded pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $8,000.

  **2. Enhanced Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)**

Plaintiff contends that significant enhanced statutory damages should be awarded under Section 605(e)(3)(C)(ii) because Defendant's actions were willful and done for commercial advantage. Section 605(e)(3)(C)(ii) provides that where "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." Emphasizing the need for deterrence as to this Defendant and others, Plaintiff requests that it be awarded enhanced statutory damages.

Pursuant to Section 605(e)(3)(C)(ii), courts may increase a damage award by an amount up to $100,000 where the "violation was committed willfully and for purposes of direct or indirect commercial advantage or financial gain." In awarding enhanced damages under Section 605(3)(3)(C)(ii), courts have frequently weighed several factors including, whether a defendant is a repeat offender, *see Garden City Boxing Club, Inc. v. Lan Thu Tran*, No. C-05-05017 RMW, 2006 WL 2691431, at *2 (N.D. Cal. Sept. 20, 2006); *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198-99 (N.D. Cal. 2000); whether Defendant charged a cover for entry to the establishment where the program was exhibited, *see Backman*, 102 F. Supp. 2d at 1198; and whether Defendant advertised the exhibition of the program, *see Universal Sports Network, Inc. v. Jimenez*, 2002 WL 31109707, at *2 (N.D. Cal. Sept. 18, 2002) (awarding only statutory minimum where no allegations that Defendant advertised or charged a cover for showing the program).

Here, Plaintiff's investigator stated by declaration that he paid a cover charge of $5.00 and observed a 52-inch color television set that "advertised the UFC fight between George St-Pierre v. Dan Hardy." (Doc. 13-3.) Further, while the investigator was on Defendant's premises, he was approached by a waitress who informed him that he had to either pay a cover charge to watch the fight or order a plate of "all you can eat wings for $11.99." (Doc. 13-3.) He observed ten people watching the fight and eating wings. (Doc. 13-3.) At the time of the main fight event between Georges St. Pierre v. Dan Hardy, the investigator determined there were 13 people in the viewing area.

Further, Plaintiff's counsel filed a supplemental declaration indicating that an additional action has been filed against Defendant in this district. (Doc. 13-4, ¶ 4.) This additional action involves an alleged claim of commercial signal piracy against Defendant. *See J & J Sports Prods. Inc. v. Burleson*, No. 1:11-cv-00425-DLB (E.D. Cal.). As a result, Plaintiff requests that the Court award enhanced statutory damages in the amount of $100,000 because Plaintiff is a repeat offender and has exhibited persistent and willful theft of such programming. (Doc. 13-4, ¶ 7.)

The additional action against Defendant, *J & J Sports Prods., Inc. v. Burleson*, No. 1:11-cv-00425-DLB,[3] has not reached judgment, although default has been entered against Defendant by the Clerk of the Court. In that case, Plaintiff has requested that Defendant be considered a repeat offender due to the pendency of this action. No judgment or findings and recommendations regarding judgment have been issued in that case; thus, the issue of Defendant's repeat-offender status is more appropriately addressed in *J & J Sports Prods., Inc. v. Burleson*, No. 1:11-cv-00425-DLB.

The fact that Defendant charged a cover or alternatively required the purchase of a food item from patrons who were in the viewing area where the Program was exhibited, however, warrants an award of enhanced statutory damages. Defendant's conduct in charging a cover or requiring a food purchase indicates that the Program was exhibited for purposes of direct or indirect financial gain. For this reason, the Court recommends that Plaintiff be awarded $3,000 in enhanced statutory damages.

### 3. Damages for Conversion

Plaintiff seeks $900 in conversion damages – the value of the property at the time of the conversion. Here, the rate card[4] for the Program at an establishment with a seating capacity of between zero and 50, which applies to Defendant's establishment, indicates the sub-license fee for the Program was $900. (Doc. 15, ¶ 8, Exh. 1.) Thus, Plaintiff is entitled to damages for conversion in the amount of $900.

### IV. RECOMMENDATION

Based on a consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS as follows:

1. Plaintiff's motion for default judgment be GRANTED;

2. Judgment be entered in this action against Defendant as follows:

---

[3] The assignment of a district judge in case number 11-cv-00425-DLB is pending.

[4] The rate card indicates the amount Plaintiff charges an establishment to sub-license and purchase the broadcast the Program. (Doc. 15, ¶ 8, Exh. 1.) The rates charged are based upon the capacity of the establishment. In this instance, for an establishment with a capacity of 0 to 50 people, the rate to sub-license and broadcast the Program is $900. (*Id.*)

a. $8,000 statutory damages for violation of 47 U.S.C. § 605;

b. $3,000 enhanced statutory damages for violation of 47 U.S.C. § 605; and

c. $900 for the tort of conversion.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    October 14, 2011**             /s/ Sheila K. Oberto
                                            UNITED STATES MAGISTRATE JUDGE